IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ADONIS GINN,

             Plaintiff,

v.                                                        CIVIL ACTION NO. 3:18-1322

CSX TRANSPORTATION, INC.,
a Virginia Corporation,
CRAIG S. HELIGMAN, M.D. an individual,
jointly and severally,

             Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Stay Litigation Pending Arbitration filed by Defendants CSX Transportation, Inc. ("CSXT") and Craig S. Heligman, M.D. ("Heligman"). *Mot. to Stay*, ECF No. 34. The relevant issues have been adequately presented to the Court and are ripe for review. For the reasons set forth below, the Court **DENIES** the motion.

**I. BACKGROUND**

This case arises out of Plaintiff Adonis Ginn's August 21, 2017 termination by Defendant CSXT after approximately eleven years of employment. *See Resp. in Opp'n*, ECF No. 38, at 1–2. At the time of his discharge, Plaintiff worked as a Signal Foreman with CSXT's special maintenance team in Huntington, West Virginia. *Compl.*, ECF No. 1, at ¶ 10. Plaintiff alleges that he had "suffered from a right shoulder condition that caused flare-ups with significant pain radiating to his arm and shoulder blade" for several years prior to his discharge, and that the condition "began to worsen beginning in February 2017." *Id.* at ¶¶ 12–13.

Over the following months, Plaintiff recalls visiting several doctors for various injuries and treatments. *Id.* at ¶¶ 14–24. On July 6, 2017, Plaintiff treated with Shannon Johnson, a chiropractor, after injuring his back the prior day. *Id.* at ¶¶ 19, 25. Plaintiff claims he visited Dr. Johnson because his wife "was already a patient of" hers, and her "office was the most convenient chiropractic office location" to his home. *Id.* at ¶ 26. Dr. Johnson concurred with an earlier medical opinion that his back injury "occurred as a direct result of [his] shoulder condition," and that he "would be required to be out of work for approximately two months." *Id.* at ¶¶ 27, 29. Plaintiff contacted his supervisor and advised him of his Dr. Johnson's opinion, which she independently communicated to CSXT by filling out a "CSX Medical Department Certification of Ongoing Illness or Injury" form. *Id.* at ¶¶ 30–31.

On July 21, 2017, Plaintiff received a letter from CSXT advising him of a formal investigation into his injury. *Id.* at ¶ 34. The investigation focused on allegations that Plaintiff was "dishonest and attempted to defraud the Company and/or benefits providers when [he], as well as more than 50 other craft employees, submitted potentially fraudulent documentation" from certain medical providers, including Dr. Johnson.[1] *Id.* The letter also served as a notice of Plaintiff's termination "pending the outcome of the formal investigation." *Id.*

Pursuant to internal grievance procedures mandated by the Railway Labor Act ("RLA"), a series of "on-property" dispute resolution proceedings began on August 1, 2017. *Mem. of Law*, ECF No. 35, at 3. At that point, CSXT conducted an investigative hearing into Plaintiff's alleged

---

[1] CSXT's investigation into its employees' alleged fraud stemmed from rumors of impending furloughs, which the company's Chief Medical Officer—Defendant Heligman—believed had prompted approximately sixty employees to seek fraudulent medical diagnoses that would extend their health and welfare benefits. *See Mem. of Law*, ECF No. 35, at 2; *Resp. in Opp'n*, at 3. [1] As Plaintiff points out, he "was not in any danger of being furloughed by CSXT" at any point. *Resp. in Opp'n*, at 3.

fraud and formally fired Plaintiff soon after. *Id.* at 4. Through his union, Plaintiff unsuccessfully appealed his termination to CSXT's Director of Labor Relations. *Id.* After the parties were unable to resolve their dispute in conference, Plaintiff submitted his claim to the National Railroad Adjustment Board ("NRAB") on September 28, 2018 for arbitration proceedings. *Id.* While NRAB acknowledged receipt of Plaintiff's notice on November 28, 2018, no arbitration has been scheduled to date. *Id.* at 4; *Resp. in Opp'n*, at 5.

On September 27, 2018—fourteen months ago—Plaintiff filed his Complaint in this Court, alleging violations of the Family Medical Leave Act ("FMLA"), the West Virginia Human Rights Act ("WVHRA"), and the Railroad Safety Act ("RSA"). *Compl.*, at ¶¶ 50–98. These statutory claims are distinct from the contractual claims under consideration in Plaintiff's ongoing arbitration. On January 17, 2019, the Court entered a Scheduling Order setting trial for January 14, 2020. *Scheduling Order*, ECF No. 15. On November 13, 2019—just twenty-six days before the pretrial conference, and well after the close of discovery and the deadline for dispositive motions—Defendants filed the instant motion to stay proceedings in this matter. *Mot. to Stay*, at 1. Plaintiff timely filed his Response in Opposition two weeks later, arguing that this case should be permitted to proceed to trial as scheduled. *Resp. in Opp'n*, at 11. The Court considers the parties' arguments below.

## II. LEGAL STANDARD

"The grant or denial of a request to stay proceedings calls for an exercise of [a] district court's judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). "The party seeking a stay must justify it by clear and convincing circumstances

outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). Put somewhat differently, a movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Ongoing arbitration does not narrow a court's wide discretion in deciding whether a stay is warranted in a given case. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983) ("In some cases . . . it may be advisable to stay litigation . . . pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."). With this discretionary framework in mind, the Court will undertake a review of the instant motion.

### III. DISCUSSION

Defendants ask the Court to stay this entire action pending conclusion of Plaintiff's ongoing arbitration proceedings before the NRAB. In considering whether to grant such a motion, courts consider "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 844 (S.D.W. Va. 2008). The Court turns to an analysis of each factor below.

    **A. Interests of Judicial Economy**

First, Defendants contend that "principles of . . . efficiency[] and judicial economy favor awaiting the outcome of arbitration." *Mem. of Law*, at 9. The Court finds this argument perplexing. This case was initiated over fourteen months ago, and—as Plaintiff notes—"Defendants were aware that [Plaintiff's] union representation was simultaneously proceeding with the collective bargaining agreement['s] . . . grievance procedure" the entire time. *Resp. in Opp'n*, at 5. While a

stay could conceivably have served the interests of efficiency at an earlier point in this litigation, these interests are now far less compelling than they may once have been. Defendants appear to admit as much, arguing that "a court may impose a stay pending arbitration if it will help ensure the discovery process in litigation does not intrude upon the issues which are preempted by the RLA." *Mem. of Law*, at 9. As discovery has already been completed, this consideration no longer weighs in the Court's balance.

Moreover, Plaintiff correctly argues that the Court must fully adjudicate his statutory claims irrespective of the outcome of the contractual claims he has raised through the arbitration process. *Resp. in Opp'n*, at 7. He points to the fact that he seeks damages independent of the arbitration process, including interest, liquidated damages, attorney fees, punitive damages, and damages for mental and emotional distress and anguish. *Id.* at 11. Plaintiff is, of course, correct; the outcome of arbitration will not resolve this case, and Defendants' strongest counterargument is only that "courts take into account whether they may wish to consider any factual findings by the arbitrator" before making a decision. *See Mem. of Law*, at 7. Redundancy is hardly an argument *for* judicial efficiency; indeed, it suggests quite the opposite. It follows that a stay's only impact on judicial economy would be to delay the resolution of this matter rather than hasten it.

**B. Hardship and Equity to the Moving Party**

Defendants do not argue that any hardship or inequity will result if their motion is denied for the simple reason that no conceivable hardship or inequity will result if their motion is denied. They do lean heavily on a recent unpublished order from the District of Maryland, wherein a court stayed an action pending arbitration in similar factual circumstances. *See Bell v. CSX Transp., Inc.*, No. 1:18-CV00744-JKB (D. Md. Nov. 19, 2019). They cite to the court's conclusion that CSXT's request was "meritorious," and argue that this finding should guide the Court's decision in the

instant case. *Mem. of Law*, at 8. Put forthrightly, the Court is not convinced that a one-paragraph unpublished order from a different case in a different federal district that is entirely devoid of any factual or legal elaboration should have any bearing on its decision here. In any event, declining to apply the same reasoning as the *Bell* court hardly results in any unexpected hardship or inequity; as Defendants acknowledge, the decision to grant a stay in these circumstances is altogether discretionary. *See id.* at 6.

### C. Potential Prejudice to the Non-Moving Party

As Defendants have not demonstrated any hardship or inequity if a stay is not granted, the Court turns to a consideration of potential prejudice to Plaintiff if a stay *is* granted. Plaintiff advances several compelling arguments on this point. First, he accurately notes that a litigant's access to a federal judicial forum to vindicate his or her statutory civil rights has been upheld time and again absent an explicit union waiver in a collective bargaining agreement. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) (reasoning that Supreme Court precedent "at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a" collective bargaining agreement); *Eastern Associated Coal Corp. v. Massey*, 373 F.3d 530, 533 (4th Cir. 2004) ("While a presumption in favor of arbitration normally governs the interpretation of arbitration clauses in [collective bargaining agreements], this presumption is inapplicable in the context of statutory discrimination claims."). Defendants do not argue that any such explicit waiver exists in the collective bargaining agreement implicated here, and so the balance tilts in favor of permitting Plaintiff to pursue his statutory civil rights claims.

Just as importantly, the Court finds that the timing of Defendants' motion is particularly prejudicial to Plaintiff. As noted above, discovery has long since closed and the deadline for

dispositive motions has long since passed. Trial is set for next month, and the parties' pretrial conference is set for next week. Plaintiff appears prepared to proceed to trial on the date agreed to at the Rule 26(f) Conference held on January 9, 2019, *see Rule 26(f) Conference Report*, ECF No. 14, at 5, and Defendants should be prepared to do so as well.

## IV. CONCLUSION

The Court accordingly **DENIES** Defendants' Motion to Stay Litigation Pending Arbitration, ECF No. 34, and **DIRECTS** the Clerk to send a certified copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 3, 2019

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE